# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TRICIA BOYET, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )      1:14CV762 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
|     Defendant. | ) |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tricia Boyet, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 8, 11). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

### PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of June 26, 2009. (Tr. 103-06.) Upon denial of that application initially (Tr. 64-74, 87-90) and on reconsideration (Tr. 75-86, 92-94), Plaintiff requested a hearing de novo before an Administrative

Law Judge ("ALJ") (Tr. 97). Prior to the hearing, Plaintiff amended her onset date to June 12, 2011, the date she last collected unemployment compensation. (Tr. 103, 176.) Plaintiff and her non-attorney representative attended the hearing. (Tr. 48-63.) The ALJ then ruled Plaintiff not disabled within the meaning of the Act. (Tr. 9-23.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 1-6.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 12, 2011, the amended onset date.
>
> 3. [Plaintiff] has the following severe impairments: disorders of the spine and depression/anxiety.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform reduced light work . . . . [Plaintiff] can lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk for six hours, each, in an eight hour workday. She can occasionally climb ropes, ladders and scaffolds. She can frequently reach overhead bilaterally. She should avoid

2

concentrated exposure to hazards. [Plaintiff] is able to
perform simple one-two step tasks.

. . .

6.  [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

11. [Plaintiff] has not been under a disability, as
defined in the . . . [Act], from June 12, 2011, through
the date of this decision.

(Tr. 14-22 (internal citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial

3

evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not

4

disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI) . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

('RFC')." Id. at 179.³ Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.⁴

---

³ "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

⁴ A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ failed to perform a function-by-function assessment of the non-exertional limitations arising from Plaintiff's depression and anxiety (see Docket Entry 9 at 3-9);

(2) the ALJ erred by failing to call a vocational expert to address the impact of the non-exertional limitations in the RFC on the available jobs Plaintiff could perform (see id. at 9-14)

(3) the ALJ improperly evaluated Plaintiff's credibility (see id. at 14-18).

Following briefing on the parties' cross-motions for judgment, Plaintiff filed a Consent Motion for Leave to File a Supplemental Brief (Docket Entry 13) "to address the impact of Mascio[ v. Colvin, 780 F.3d 632 (4th Cir. 2015),] on her pending appeal" (id. at 1), which the Court granted (see Docket Entry 14). In Plaintiff's supplemental memorandum, she raises three additional issues on review based on Mascio:

(4) the ALJ violated Mascio by failing to explain how he resolved conflicts between the RFC and the state agency consultants' opinions, to which he gave great weight (see Docket Entry 15 at 1-3);

(5) the limitation in the RFC to simple one-two step tasks does not sufficiently account for Plaintiff's moderate limitation

8

in concentration, persistence, and pace, because, under Mascio, such a limitation does not address Plaintiff's ability to stay on task (id. at 3-4); and

(6) the ALJ erred by using a boilerplate credibility finding that Mascio rejected, and "did not properly analyze credibility elsewhere in the decision" (id. at 4-6).

Defendant disputes all of Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 12 at 3-8; Docket Entry 16 at 1-6.)

## 1. Function-by-Function Assessment[5]

Plaintiff maintains that the ALJ violated Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"), and Mascio, by failing to complete a function-by-function assessment of Plaintiff's ability to perform mental work-related activities. (See Docket Entry 9 at 3-9; Docket Entry 15 at 1-3.) Plaintiff notes that, "[i]n addition to finding depression and anxiety to be [] severe impairments, the ALJ found [Plaintiff] has mild restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties maintaining concentration, persistence or pace" (Docket Entry 9 at 4 (citing Tr. 15-16)) and that, despite those

---

[5] Substantial overlap exists between Plaintiff's first, fourth and fifth issues on review and, thus, this Recommendation discusses them together.

findings, the ALJ failed to provide "some functional analysis of [Plaintiff's] ability for specific work-related mental functions such as her ability to 'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting'" (id. at 6 (citing SSR 96-8p, 1996 WL 374184, at *6)). Plaintiff additionally argues that the ALJ's "generic finding that [Plaintiff] is capable of simple one-two step tasks" does not sufficiently account for Plaintiff's moderate limitations in concentration, persistence, or pace (see Docket Entry 9 at 6-8 (citing Wiederholt v. Barnhart, 121 F. App'x 833, 839 (10th Cir. 2005), Sexton v. Colvin, 21 F. Supp. 3d 639, 642-43 (W.D. Va. 2014), and Davis v. Astrue, Civ. No. 06-3550, 2007 WL 2248830, at *3-4 (E.D. Pa. July 30, 2007) (unpublished)), because such a limitation does not address Plaintiff's ability to stay on task (Docket Entry 15 at 3-4 (citing Mascio, 780 F.3d at 638)).

Plaintiff further asserts that the ALJ's failure to perform a function-by-function assessment of Plaintiff's abilities to perform work-related activities manifested in a second reversible error. (See Docket Entry 15 at 1-3.) More specifically, Plaintiff notes that the state agency consultants' RFC assessments, which the ALJ gave "great weight" (id. at 2 (citing Tr. 21)), both included limitations on Plaintiff's ability to stoop (see Tr. 71

10

(occasional), 82 (frequent)). However, Plaintiff points out that the ALJ neither resolved that conflict between the two assessments nor included any limitation on stooping in the RFC. (See Docket Entry 15 at 2-3.) Plaintiff contends that, under Mascio, prejudicial error arises "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record." (Id. at 1 (citing Mascio, 780 F.3d at 636).) Plaintiff's arguments ultimately have merit.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d

863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit recently addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. Mascio, 780 F.3d at 636-37. Although the Fourth Circuit stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," Mascio, 780 F.3d at 636, it concluded that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, although Plaintiff faults the ALJ for not parsing out all of the different mental work-related abilities in the RFC (see

12

Docket Entry 9 at 3-9), Plaintiff did not testify to any limitations arising from her depression or anxiety affecting her memory, concentration, judgment, stress toleration, or ability to interact with co-workers/supervisors (see Tr. 52-62);[6] nor has she cited to any record evidence supporting such limitations (see Docket Entry 9 at 3-9). Accordingly, any failure by the ALJ to perform a function-by-function analysis of Plaintiff's mental abilities, where contested evidence did not exist regarding such abilities, constitutes harmless error. Mascio, 780 F.3d at 636 (holding that "remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested"); SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a . . . mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the [ALJ] must consider the individual to have no limitation or restriction with respect to that functional capacity.").

Regarding the ALJ's step three finding that Plaintiff had moderate limitation in concentration, persistence, or pace (see Tr.

---

[6] In a Report of Contact on June 30, 2011, Plaintiff denied memory or concentration problems, and stated that she socialized with her immediate family and was "fine in crowds." (Tr. 165.) Moreover, Plaintiff's testimony that her depression caused her to "feel[] down" and not "want to be around a lot of people" (Tr. 60) does not equate to evidence of limitation in her ability to interact with co-workers and supervisors, particularly given undisputed record evidence that she managed to hold her job coordinator/accounting position for nearly 11 years (see Tr. 133, 145) (losing that job only due to a layoff (see Tr. 53-54, 132)), and her shipping/receiving job for over 10 years (see Tr. 133, 145).

13

16), Plaintiff argues that, under Mascio, the ALJ's limitation in the RFC to simple one-two step tasks does not sufficiently account for such limitation. (Docket Entry 15 at 3-4 (citing Mascio, 780 F.3d at 638).) Indeed, the Mascio court expressly held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Mascio, 780 F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in concentration, persistence, or pace would not result in any limitation in the RFC. Id. The Western District of Virginia recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio

14

"misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in concentration, persistence, or pace, where ALJ relied on the claimant's daily activities and treating physicians' opinions of claimant's mental abilities).

Here, however, the ALJ's decision provides no such explanation as to why a limitation to "simple one-two step tasks" (Tr. 17) sufficiently accounts for Plaintiff's moderate limitation in concentration, persistence, or pace (see Tr. 16). At step three, the only support the ALJ offered for the moderate limitation consists of the unrevealing observation that, "[r]ecords from Greensboro Health Care report that [Plaintiff] experienced depression and anxiety in 2012." (Id.) Although the ALJ stated that he gave the opinions of the state agency consultants "great weight" (Tr. 21), he clearly did not credit the consultants' findings with respect to Plaintiff's mental limitations: both consultants found Plaintiff's mental impairments non-severe (assessing no limitation in concentration, persistence, or pace), and, for that reason, did not even evaluate Plaintiff's mental RFC (see Tr. 68-69, 79-80). As a result, without further explanation, the ALJ's crediting of the state agency consultants' opinions does not provide a "logical bridge," Clifford, 227 F.3d at 872, between the ALJ's conclusion that Plaintiff suffered moderate concentration deficits and the ALJ's decision that Plaintiff could perform simple

15

tasks in the work place, without any further concentration-related restriction. Moreover, the ALJ did not address Plaintiff's concentration deficits <u>at all</u> in his RFC discussion. (<u>See</u> Tr. 16-21.) In sum, the ALJ's failure to explain why a restriction to simple tasks in the RFC adequately accounted for Plaintiff's moderate limitation in concentration, persistence, or pace runs afoul of <u>Mascio</u> and warrants remand.

Plaintiff has additionally emphasized the failure of the ALJ to include any limitation on stooping in the RFC and to resolve the conflict between the state agency consultants (both of whom the ALJ gave "great weight" (Tr. 21)) regarding the appropriate degree of limitation in stooping. (<u>See</u> Docket Entry 15 at 1-3; <u>see also</u> Tr. 71 (occasional), 82 (frequent).) Accordingly, upon remand, ALJ should also specifically address whether Plaintiff has any limitations in stooping, and clarify which state agency opinion he credits regarding Plaintiff's ability to stoop.

## 2. **Vocational Expert Testimony**

Next, Plaintiff contends that the ALJ erred by failing to call a vocational expert to address the impact of the non-exertional limitations in the RFC on the available jobs Plaintiff can perform. (<u>See</u> Docket Entry 9 at 9-14.) The Commissioner correctly argues that the existing non-exertional limitations in the RFC do not erode the occupational base of light (and sedentary), unskilled jobs to such a degree as to require the testimony of a vocational

16

expert. (See Docket Entry 12 at 5-7 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 200.00(b), and Social Security Ruling 85-15, <u>Titles II and XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments</u>, 1985 WL 56757 (1985)).) However, upon remand, if the ALJ again finds moderate limitation in Plaintiff's concentration, persistence, or pace and determines that additional concentration-related non-exertional limitations result, the ALJ should consult a vocational expert to address any additional non-exertional limitations arising from Plaintiff's concentration deficits.

**3. Credibility**

Plaintiff additionally faults the ALJ for not crediting Plaintiff's testimony regarding her pain and other symptoms (see Docket Entry 9 at 14-18), as well as for relying on the same sort of "boilerplate credibility finding" forbidden by <u>Mascio</u> (Docket Entry 15 at 4-6 (citing <u>Mascio</u>, 780 F.3d at 639)).

Due to the recommendation to remand, and the likelihood that the ALJ will reassess Plaintiff's credibility on remand, no need exists to address Plaintiff's arguments directed at her pain and other symptoms. However, the ALJ found Plaintiff's allegations "not credible to the extent they are inconsistent with the above [RFC] assessment" (Tr. 18), which constitutes the very language the <u>Mascio</u> court found "gets things backwards" by implying that the ALJ first determined the RFC, and then used the RFC to decide the

17

claimant's credibility, Mascio, 780 F.3d at 639 (citing Bjornson v. Astrue, 671 F.3d 640, 644-45 (7th Cir. 2012)).  Thus, upon remand, the ALJ should perform a credibility analysis consistent with Mascio.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent this Recommendation.  As a result, Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 8) should be granted in part (i.e., to the extent it requests remand) and Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) should be denied.

                                                 /s/ L. Patrick Auld
                                                 **L. Patrick Auld**
                               **United States Magistrate Judge**

February 16, 2016